**IN THE U.S. DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

DI PASQUALE, CHRISTIANO

                         Plaintiff,            Civil Action No. _____

vs.                                   JURY TRIAL DEMANDED

HARVEST SHERWOOD FOOD
DISTRIBUTORS and HARVEST
MEAT COMPANY,

                         Defendants.

## COLLECTIVE ACTION COMPLAINT
### INTRODUCTION

1.    This is an action seeking payment of wages, including but not limited to earned but unpaid compensation for hours worked and unpaid overtime compensation, due to Christiano DiPasquale (hereinafter "Plaintiff") and other similarly situated workers under federal and Colorado law.

2.    At all times relevant to this litigation, the Plaintiff and those similarly situated have worked for Defendants Harvest Sherwood Foods and Harvest Meat Company (hereinafter "Defendants") as IT Site Support Engineers.

3.    Defendants have failed to pay compensation owed to the Plaintiff and those similarly situated, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et. seq., and the Colorado Wage Act, C.R.S. § 8-4-101, et seq.

4.    Defendants have failed to pay overtime compensation owed to the Plaintiffs and those similarly situated for hours worked in excess of 40 per workweek, in violation of 29 U.S.C. § 207 and Colorado Wage Act, C.R.S. § 8-4-101, et seq.

### JURISDICTION AND VENUE

5.    This Court has original jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

7. Plaintiff Christiano DiPasquale is a resident of Englewood, Colorado. He worked for the Defendants from June 19, 2023 to May 6, 2024 as an IT Site Support Engineer.

8. At all times relevant to this action, Plaintiff worked for Defendants remotely within Colorado.

9. Defendant Harvest Sherwood Foods is a corporation incorporated in the state of Michigan.  Defendant Harvest Sherwood Foods does business within the state of Colorado.

10. Defendant Harvest Sherwood Foods is in the business of food and beverage distribution.

11. Defendant Harvest Sherwood Foods was, at all times relevant to this action, Plaintiff's managing and directing employer.

12. Defendant Harvest Meat Company is a corporation incorporated in the state of California. Defendant Harvest Meat Company does business within the state of Colorado and maintains an office at 16304 E 32nd Avenue, Suite 35, Aurora, CO 80011.

13. At all times relevant to this action, Defendant Harvest Meat Company was the payor on all of Plaintiff's paystubs for direct deposit of his compensation.

## FACTUAL ALLEGATIONS

14. Plaintiff worked for Defendants as an IT Site Support Engineer from June 19, 2023 to May 8, 2024.

15. His job duties were first level IT support for all aspects of Defendants' operations in Colorado and throughout the United States.

16. In this role, Plaintiff's job duties included common level one IT support functions such as: resetting passwords, clearing locked sessions in company ERP system, reconnecting computers to printers, assisting third party network and printer vendors, using Standard Operating Procedures and Existing Knowledge base to clear locks and inventory imbalances in the company ERP system, allocating existing software licenses bought by higher level teams,  and contributor level (not global admin) Microsoft Azure functions.

17. At no time during his employment with Harvest Sherwood Foods was Plaintiff the direct supervisor of any other Harvest Sherwood employees.

18.     Plaintiff's regular rate of pay was $ 36.06 per hour.

19.     Shortly after starting the role of IT Site Support Engineer, Plaintiff DiPasquale was informed that his position would be required to work "24/7 On-Call" shifts. This policy applied to all IT Site Support Engineers employed by Harvest Sherwood, regardless of their location across the country.

20.     In practice, the policy required IT Site Support Engineers to work one to two (1-2) week shifts where they were required to work their normal hours, and then remain "on-call" or at the ready to accept any IT issue calls that may arise overnight and into the next day.

21.     After working one of these 24/7 on-call shifts, Plaintiff DiPasquale realized that he was not being compensated for his time beyond the regular workday and his regular wages. He also realized there was no rest period allowed or designated during the "on-call" period.

22.     After his first on call shift in September 2023, Plaintiff DiPasquale directed his concerns about the on-call system to Harvest management. Following Plaintiff DiPasquale's communications, Harvest management then changed the on call system to after hours only, meaning the on-call shift would not include An IT Site Support Engineer's regular day shift.

23.     At this time there were seven (7) IT Site Support agents required to work on-call shifts. Each of the seven agents were to work one-week on-call shifts, with the responsible agent changing each week.

24.     On or about early October 2023, the Level 1 Service desk team was told by Harvest Human Resources and management that other teams within the Harvest Sherwood IT department were not pleased with the Level 1 team being able to have a person off daily each week as their teams were not large enough to do so.  The system for on-call work was then changed back to 24/7 on call, including the regular day shift.

25.     In early November 2023, Plaintiff DiPasquale asked his supervisor, Chris Moreland, about whether the Harvest on-call policy was legal or fair to employees. In response, Moreland told DiPasquale to "research it himself." Moreland also told DiPasquale that he was a "salaried employee and these are your job duties. You will face disciplinary action if you refuse to do your job."

26.     Plaintiff DiPasquale then told Moreland that he thought he and the other IT Site Support Engineers were misclassified as FLSA exempt employees and that they should be non-exempt.

27.     After this discussion, Moreland began excluding DiPasquale from team meetings and group messages that were necessary for Plaintiff to complete his work effectively.

28.    On December 8, 2023, Plaintiff DiPasquale first sent an email message to Harvest Sherwood Human Resources regarding 24/7 "on-call" shifts and payment of wages for that time. DiPasquale stated that "on call duties for the service desk and support agents seems to be a bit unfair and possibly not legal being responsible for overnight for 7 days as well as the normal 8-hour shift duties during the day. This was not advertised when I agreed to join HS and my agreed upon salary."

29.    Plaintiff DiPasquale further informed Harvest HR that he would like to figure out a solution to payment for the on-call shifts before he went on a scheduled eleven day on-call shift over the span of two major holidays, Christmas and New Years Day.

30.    Plaintiff DiPasquale's December 8, 2023 email further explained that he had contacted the Colorado Department of Labor and Employment on that same day. DiPasquale's email reported to Defendants that the Colorado Department of Labor and Employment had advised him that if he is "on call", he is to be compensated for that time.

31.    Plaintiff DiPasquale's December 8, 2023 message concluded by noting that his salary is based on a 40-hour work week, not 168 hours that would fully account for his "on-call" time. He further noted that his salary would place him below minimum wage, at approximately $8.60/hour if his on-call time were included in his total hours worked.

32.    Plaintiff DiPasquale's email also explained that during on-call shifts he was unable to attend to anything other than work for Defendants, saying "for that week [I am] unable to attend to personal duties while being responsible for 24/7 calls.  Please advise."

33.    On December 19, 2023, Harvest Sherwood representative Sylvia Garcia responded via email that the matter was being escalated to the HR Director and HR Manager.

34.    On or about January 2, 2024, Harvest manager Chris Moreland held a meeting with the entire Level 1 support team where he announced that, effective immediately, the on-call system was being changed back to exclude the regular 8-hour day shift, and only required after regular business hours for on call.

35.    On or about January 10, 2024, Plaintiff DiPasquale sent a follow-up message to Sylvia Garcia noting that his meeting with Moreland and HR representatives "did not address the retroactive pay request for the time we were told was part of our salaries as clearly changes were implemented to avoid legal issues[]."

36.    On January 10, 2024, Garcia responded again to Plaintiff DiPasquale that "[w]e have come to a solution and the solution will be presented within your leadership's time frame."

37.    Two days later, another meeting with the Level 1 Support team and Harvest HR Manager Melissa Carballo, Vice President of IT Mike Buchetto, manager Chris Moreland, was

held on the on-call system. At that meeting, HR Manager Melissa Carballo informed the Level one team that there were "no legal issues" with the on-call system and that Site Support engineers were salaried employees who did not need to be compensated for their on-call time.

38.    Carballo also announced at this meeting that the on-call shifts would once again go back to the 24/7 on-call structure, with no additional compensation to be paid it Site Support engineers.

39.    Plaintiff DiPasquale questioned the change and asked the Harvest HR representative "what would the sentiment be if we just had the Colorado Labor board figure it out for us?" Carballo responded with "That won't go well for you". Plaintiff DiPasquale responded that he was being told one thing by the state labor board and a completely different story from Harvest HR and didn't know who to believe.

40.    At this time, Plaintiff DiPasquale also noticed that Defendants had changed his classification, from FLSA exempt to FLSA non-exempt in response to his questions about the 24/7 "on-call" shifts.

41.    His January 10, 2024 email further explained that Plaintiff DiPasquale was advised by the Colorado Department of Labor and Employment to submit a claim to Defendants for the "on-call hours "as [IT Site Support Engineers] should be compensated for time already worked with the understanding our salaries are based off 40 hour work weeks and not 168 (24hours/7days)."

42.    Plaintiff DiPasquale then presented calculations about what he thought he was owed for these hours worked during the on-call shifts at both Colorado 2023 minimum wage rate and at his regular hourly rate of $36.76 per hour. These totals were $4368 (minimum wage) and $11,763.20 (paid at regular rate). DiPasquale noted that none of these calculations included any amount for unpaid overtime for these hours.

43.    Defendants failed to respond to Plaintiff DiPasquale's email. Consequently, on January 12, 2024, Plaintiff DiPasquale submitted a demand for wages to Defendants on a form he received from the Colorado Department of Labor and Employment. That demand was for $4,368.00 calculated based on "17 days of 24/7 'on-call', less regular salary, less 88 hours, 320 hours at the Colorado Minimum Wage [of] $13.65/hour for the remaining 320 hours, *not including* possible overtime."

44.    Plaintiff DiPasquale did additional research on his claims and sent Defendants an email on January 16, 2024 with his findings. In pertinent part, this email once again noted that all DiPasquale's estimates of back wages did not include any amount for possible overtime owed.

45. Plaintiff DiPasquale's January 16, 2024 email further noted that HR tried to dissuade Plaintiff from filing a complaint with the Colorado Department of Labor and Employment. "Per their guidance, I will be filing a complete case with the labor board as well. I was hoping for a more amicable solution. After being told today by HR that if I go to the board and file that it "won't go well for me", I am a bit concerned for my livelihood now despite federal anti-retaliation laws. I am open for amicable discussion and reasonable negotiation on the matter. Thanks for understanding."

46. On January 18, 2024 Plaintiff DiPasquale sent two emails to Harvest Sherwood HR about his initial demand for payment of back wages. In the first message, Plaintiff DiPasquale notes that the on-call policy appears nowhere in the employee handbook and that he and his fellow Site Support Engineers are paid based on an hourly rate. Plaintiff DiPasquale again notes that he was never told about the on-call requirement when he interviewed with Harvest Sherwood for the job and his recruiter was completely unaware of the requirement.

47. In his second message of January 18, Plaintiff DiPasquale again mentioned that he thought the amount of wages he was owed was potentially more than the amount he had initially demanded.

48. As a result, on January 19, 2024 Plaintiff DiPasquale updated his demand for payment of wages from Harvest Sherwood by submitting a second demand for wages on the form provided by the Colorado Department of Labor and Employment. This demand was made for $16,330.65 based on "17 days of 24/7 'on call', less 88 regularly paid hours 320 hours at $36.05 x 1.5 for the remaining hours over 40 hours per week, not including holiday pay."

49. While not responding to DiPasquale's two demands for unpaid wages, Harvest Sherwood undertook a campaign to prevent him and other Site Support Engineers from being fully compensated for time spent working "on-call."

50. For Plaintiff DiPasquale, HR and other Harvest Sherwood representatives promised meetings to address his wage claims which never happened.

51. Before working his next scheduled on-call shift, Plaintiff Di Pasquale asked the VP of IT, Mike Buchetto, for a meeting with HR and him to discuss a designated rest period for on call shifts. In response, Plaintiff DiPasquale was told that Buchetto didn't know what DiPasquale was talking about and that HR will be meeting with people individually the following week.

52. At the end of February 2024 and into the first week of March 2024, Plaintiff DiPasquale worked another on call week and sent more letters of demand for payment to Harvest Sherwood.

53. On or about the week of March 5, 2024, Harvest Sherwood held one-on-one meetings with each of the IT Site Support Engineers including Plaintiff DiPasquale.

54. DiPasquale was approached by Defendant Harvest Sherwood HR on March 7, 2024 for his individual meeting. During that meeting, DiPasquale was offered $6,040.05 as payment for all time worked during on-call shifts in 2023 retroactive to November only, and for the shifts thus far in 2024. Harvest Sherwood arrived at this amount by only counting some of the time worked "on-call" as "waiting" time during which DiPasquale would only be paid the minimum wage rate $14.42 rather than at his regular rate of $36.06.

55. Plaintiff DiPasquale informed Defendants at that time that the payment should include all of his shifts for 2023, as the law had a two-year statute of limitations.

56. Defendant Harvest Sherwood also confirmed that Plaintiff DiPasquale and other site support engineers were now properly treated as FLSA non-exempt employees but nonetheless discounted most of their on-call work as "waiting" time without any analysis as to whether IT Site Support Engineers were actually waiting or performing work that should be compensated.

57. Defendant Harvest Sherwood announced for the first time that this "waiting" time will only be paid at the minimum wage rate, as opposed to the employee's regular wage rate or overtime rate as required by law.

58. Defendant Harvest Sherwood made no change to the on-call system's lack of any rest period or sleep time for on-call hours.

59. At the same time, Harvest Sherwood officially changed the IT Site Support Engineer classification from FLSA exempt to FLSA non-exempt.

60. Plaintiff DiPasquale rejected Defendants' offer of $6,040.05 as insufficient to fully compensate him for the on-call shifts he had already worked. DiPasquale understood this amount to not include the correct dates of his on-call shifts and did not include all time worked during an 11-day on-call shift.

61. Defendant Harvest Sherwood has been aware of DiPasquale's concerns about the legality of the on-call policy since at least December 8, 2023, when he first expressed his grievances about the policy via email to Human Resources.

## FLSA COLLECTIVE ACTION ALLEGATIONS

62. Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

63.  Plaintiff brings this action individually and on behalf of all other individuals similarly situated pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). Plaintiff and similarly situated individuals were employed by Defendants within the meaning of the FLSA, as IT Site Support Engineers. The proposed collective is defined as follows:

All persons who worked for Defendants as IT Site Support Engineers or in other positions with similar job titles and/or duties at any time within three years prior to the commencement of this action ("Collective"), and who were not paid all wages earned for hours worked.

64.  Plaintiff has consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b) and his consent form is attached as **Exhibit A**. As this case proceeds, it is expected that additional individuals will file consent forms and join as opt-in plaintiffs.

65.  Defendants' failure to pay Plaintiff and the Collective members for all hours worked results from generally applicable policies and practices of Defendants and does not depend on the personal circumstances of individual Plaintiffs or Collective members.

66.  Plaintiff estimates the size of the Collective to be at least ten (10). The precise size of the Collective can be ascertained from records of the Defendants.

67.  Defendants failed to pay the Plaintiffs and the Collective all wages earned for hours worked.

68.  Defendants' conduct was widespread, repetitious, and consistent.

69.  Defendants' conduct was willful and in bad faith.

### COUNT I VIOLATION OF THE FLSA – OVERTIME

70.  Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

71.  Defendants are an enterprise engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 203(s)(1).

72.  Defendants suffered or permitted the Plaintiffs and all those similarly situated to work for them within the meaning of 29 U.S.C. § 203(g).

73.  Defendants were required under the Fair Labor Standards Act, 29 U.S.C. § 207(a), to pay the Plaintiff and those similarly situated at a rate not less than one and one-half times the Plaintiff's regular wage rates for all hours the Plaintiff worked in excess of 40 in a workweek.

74. Between June 10, 2023 and the present, Plaintiff at times worked over 40 hours a week.

75. The FLSA requires that "on-call" or wait time that is primarily for the benefit of the employer be treated as compensable time. When an employee is required to remain "at the ready" and the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on-call is compensable. 29 C.F.R. § 553.221; *see Renfro v. Emporia*, 948 F.2d 1529 (10th Cir. 1991).

76. To date, Defendants have not paid Plaintiffs and those similarly situated one and one-half times their regular rates for all hours worked by Plaintiffs in excess of 40 per week for weeks during the period between January 1, 2023 and the present, in violation of the Fair Labor Standards Act, 29 U.S.C. § 207(a).

77. At times relevant to this litigation, Defendants, and each of them, acted willfully or with reckless disregard as to their obligation to pay one and one-half times the Plaintiffs' regular rate of pay for hours worked in excess of 40 per week, and, accordingly, the violation was willful for purposes of the Fair Labor Standards Act, 29 U.S.C. §§ 255(a) and 260.

78. As a result of Defendants' unlawful conduct, the Plaintiffs have incurred a loss of overtime compensation in an amount to be determined at trial, along with liquidated damages, attorney's fees, and costs of litigation.

### COUNT II VIOLATION OF COLORADO WAGE ACT – OVERTIME

79. Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

80. For purposes of calculating wages owed under the Colorado Wage Act for employees paid on a salary basis, "any overtime compensation is based on an hourly regular rate calculated from the employee's pay." 7 C.C.R. 1103-1, 1.8 (COMPS Order #39).

81. "Time Worked" under the CWA is defined as "time during which an employee is performing labor or services for the benefit of an employer, including all time s/*he is suffered or permitted to work*, whether or not required to do so." *Id.* at 1.9 (emphasis added).

82. Requiring or permitting employees to be on the employer's premises, *on duty*, or at a prescribed workplace (but not merely permitting an employee completely relieved from duty to arrive or remain on-premises) – including but not limited to putting on or removing required work clothes or gear, receiving or sharing work-related information, security or safety screening, remaining at the place of employment awaiting a decision on job assignment or when to begin work, performing clean-up or other duties 'off the clock,' clocking or checking in or out, or waiting for any of the preceding – shall be

considered time worked that must be compensated. 7 C.C.R. 1103-1, 1.9.1 (COMPS Order #39) (emphasis added).

83.   As a result of Defendants' unlawful conduct, the Plaintiffs have incurred a loss of overtime compensation in an amount to be determined at trial, along with liquidated damages, attorney's fees, and costs of litigation.

### COUNT III VIOLATION OF COLORADO WAGE ACT – FAILURE TO PAY WAGES OWED

84.   Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

85.   The Colorado Wage Act, C.R.S. 8-4-101 *et seq.*, requires Colorado employers to pay employees their earned wages in a timely manner.

86.   Plaintiff DiPasquale made demands for the payment of wages to Defendants to which Defendants failed to respond in a timely manner and failed to pay the wages demanded.

87.   During workweeks between June 10, 2023 and the present, Defendants failed to pay Plaintiff and those similarly situated any wages for some hours worked in certain workweeks.

88.   By failing to pay the Plaintiff and those similarly situated all of their earned wages at their established wage rates during workweeks between January 1, 2023 and the present, Defendants violated the Colorado Wage Act.

89.   As a result of Defendants' unlawful conduct, the Plaintiffs and those similarly situated have incurred loss of compensation in an amount to be determined at trial, along with multiple damages, attorney's fees, and costs of litigation.

### COUNT IV RETALIATION UNDER THE FLSA

90.   Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

91.   The FLSA prohibits retaliation against an employee who has filed a complaint or instituted or caused to be instituted any proceeding under or related to the FLSA. 29 U.S.C. § 215(a)(3).

92.   Covered employees are protected from retaliation regardless of whether a complaint is made orally or in writing, and most courts have concluded that internal complaints to an employer are protected activity for purposes of retaliation.

93.    As a result of Defendants' unlawful conduct, the Plaintiff and those similarly situated have incurred loss of compensation in an amount to be determined at trial, along with multiple damages, attorney's fees, and costs of litigation.

## JURY DEMAND

Plaintiff requests a trial by jury on their claims.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays that this Court grant relief in their favor, and against Defendants on a joint and several basis, as follows:

a) Award all Plaintiffs actual damages, multiple damages, liquidated damages, and prejudgment interest as a result of the wrongful conduct complained of herein;

b) Award all Plaintiffs their costs and expenses in this litigation, including reasonable attorney's fees and expert fees;

c) Provide such other and further relief as the Court deems just and proper.

Respectfully submitted,

Christiano DiPasquale,

On behalf of himself and all others similarly situated.

/s/   Renee M. Gerni

Renee M. Gerni, #59211
Baker Law Group, LLC
8301 E. Prentice Place, Suite 405
Greenwood Village, CO 80111
(303) 862-4564
renee@jbakerlawgroup.com

Date: June 28, 2024